The first argued case this morning is number 147088, Jackson v. McDonald. Mr. Carpenter. Good morning, Your Honors. Thank you very much. Kenneth Carpenter appearing on behalf of Mr. Francis Jackson. Mrs. Feinmoore's claim for accrued benefits could not have been paid by the VA unless Mr. Feinmoore had in fact been awarded past due benefits by the VA based upon his pending claim for service-connected compensation. Because Mr. Feinmoore was awarded past due benefits as a result of his claim, Mr. Jackson was entitled to the fee he called for in his fee agreement. I'm sorry, you said that Mr. Feinmoore was awarded benefits? I thought the issue here was that Mr. Feinmoore was in fact not awarded benefits. He was on the verge of being awarded benefits when he died, and only his surviving widow was actually awarded benefits. And that's the issue in this case, Your Honor, is whether or not in fact there is a difference under 5904 between that distinction. And there is, in our view, no distinction under 5904 that either deals with death or with a subsequent accrued benefit claim. In point of fact, Mr. Jackson – So the death of Mr. McDonald, it eliminated – Mr. Feinmoore, you mean? Mr. Who? Feinmoore. Feinmoore. You said McDonald. Okay. Of Mr. Feinmoore, his death eliminated or prevented the implementation of the award that was going to be given to him. It did temporarily, Your Honor, and that's the key here. If Mr. Feinmoore had had no survivors that qualified under the accrued benefits statute – If he had not died, he would have received an award. That's correct. But if he died, then his qualifying survivors were entitled to have those benefits, those past due benefits that were due and owing, paid. And those past due benefits that were due and owing were subject to a preexisting fee agreement in which Mr. Feinmoore, prior to his death, had assigned 20 percent of those past due benefits. So in fact, there were only 80 percent of the total past due benefits that were available for accrued benefit. But the claim was attorney's fees on the award to Mrs. Feinmoore. No, it's based upon the award to Mr. Feinmoore because there would not be an award – It's based upon the award, but there was no award ever made. Well, with respect, Your Honor, under this court's definition – Then he's entitled to the fees that were awarded to Mrs. Feinmoore on the basis of the work that he did for her husband. No, Your Honor, not the benefits that were paid to Mrs. Feinmoore. The benefits that were paid to Mrs. Feinmoore were the 80 percent of those past due benefits. The 20 percent has remained with the VA. That 20 percent was assigned pursuant to the provisions of 5904 based upon a valid fee agreement with Mr. Feinmoore. Mr. Jackson's claim is based upon his fee agreement under 5904. This is a statutory provision that creates a contract between the veteran and the attorney that if it meets the terms of the statute, the VA is required to withhold. It met the requirements of statute. Suppose that Mr. Feinmoore was not married at the time of his death and had no survivors. Would there have been any type of award that would have been implemented? Not under the facts of this case, Your Honor. And what makes it different in this case is that he was married. That's right. And therefore, his qualifying survivors under 38 U.S.C. 5121 small a were entitled to compel… They have to make a claim for that, correct? Yes. That's a separate claim. Well, it isn't a separate claim. It's a derivative claim. It is a claim that does not exist but for the pending claim that was the subject matter of both the fee agreement and the award of past due benefits. And to make the distinction that the Veterans Court made here is to create an artificial distinction that defeats the purpose of the statute. The statute was to ensure – the purpose of the statute, as indicated by this court in its case law, is to ensure that veterans have the opportunity to be represented by attorneys. Mr. Finemore was represented by Mr. Jackson for a period of nearly 10 years to get this award of past due benefits. That award of past due benefits was made by the board. It was delayed in its implementation and ultimately resulted in a document that promulgated and assigned multiple ratings that resulted in a significant award of past due benefits. Those benefits were then payable to his survivors, but they were payable to his survivors subject to the assignment of the portion of those benefits under 5904. To interpret 5904… The benefits were payable based on the claim that Mrs. Finemore made, correct? She didn't receive Mr. Finemore's benefits as a survivor. She received them because a separate claim was made. I respectfully disagree. She could not receive her accrued benefits but for the existence of Mr. Finemore's claim. Now, that's understood. That's understood that he established – there's been an establishment that Mr. Finemore was entitled to some benefits. And you're saying that that entitlement, the work that he did for Mr. Finemore, should transfer over to Mrs. Finemore because he – but for the work he had undertaken for Mr. Finemore, there would have been no claim on behalf of Mrs. Finemore. That's correct. It simply would not exist as either a matter of fact or a matter of law. So let's go back to my original question. The reason what happened here is that Mr. Finemore never – his award was never implemented because of his death. That is correct, Your Honor. So we're talking about two different claims. To involve ourselves with a discussion about the distinction between claims here is to avoid the plain language of 5904. 5904 talks about on the basis of the claim. The claim in this case is the claim for service-connected compensation. The statute also says that there will be an award of any past-due benefits resulting from any proceeding before the VA. That is an unqualified statement by Congress that there is an intent to honor the contract that was statutorily created that required the VA to withhold, as they did in this case, 20 percent of the past-due benefits from the award that was ultimately made. It was, in fact, not implemented until after death, and it was not, in fact, implemented but for the accrued benefit claim of Mrs. Finemore. But that does not change the statutory language. The statutory language only talks in terms of past-due benefits. There is no claim. Can I ask you, why isn't the most straightforward reading of the statute that there's no award until the announcement of the amount in the usual way where there might be liability and quantum are different issues the way we talk about it in some other context. But at the time of death here, there was not, in fact, not even quite a determination of amount, but certainly no announcement of amount. So that what the board had done was to say there is service connection, but there was still a determination for the regional office to make about how disabled Mr. Finemore was, and therefore whether it was going to be, as it turned out, 70 percent or something less. Why isn't the natural meaning of award, which is what all this, I think, turns on – maybe tell me if that's wrong – that simply didn't happen yet? Well, with respect, Your Honor, we are – this panel is controlled by this court's decision in Snyder. But I take Snyder actually to say no award until the amount is determined. No, it says that there are two things that constitute a past due benefit awarded, and that is the claimant's service-connected disability forms the basis for his or her claim for compensation. That happened in the 2007. And in order to make an award on the basis of that claim, the VA must assign a disability rating. And that's the key here. Based upon what the board did, the VA had no alternative but to assign it. They simply didn't, as I discussed with Judge Reyna. If, in fact, Mr. Finemore had no survivors under 5121, then this matter would come to an end. Can I just ask, would that have been true? Again, assume, contrary to fact, no survivors, and assume that the official in the regional office had actually mailed a letter saying you are entitled to 70 percent of the $97,000 or something, but no check had been issued yet. I don't know if that occurs. And then Mr. Finemore dies by assumption of this question, no survivors. Does that money go to his estate, or does the money, even though awarded but not yet sent, what happens to that money? That money essentially cheats back to the VA under the current system. Now, this court has not addressed the fact set under your hypothetical in which such a circumstance would happen and whether or not there would be an obligation for the VA to have still withheld. In Snyder, they said in the incarcerated veterans context that there was an obligation to withhold the full 20 percent of the amount that was awarded. So in your hypothetical, had in fact there been an award prior to death, then there would have been at least an argument under 5904 in Snyder that the attorney would still have been entitled to his fee, even though the 80 percent would have been retained by the VA. Can I just ask one, I guess it's really not much of a legal question, but it sounds to me like you have at least the beginnings of an unjust enrichment claim against survivors, or I guess it's now Mrs. Finemore's daughter, is that right? But that doesn't exist here, Your Honor. As a matter of fact, under the present fact set, because Mrs. Finemore has now died, there is no one for the VA to pay that 20 percent to. So if it's not paid to Mr. Jackson, then the VA, instead of paying out the full 100 percent – Not to her estate? No, sir. It's not authorized under the statute. Unfortunately, I've argued this issue many times before this court, and 5121A has been interpreted by this statute to exclude the estate. The estate is not mentioned. Now, there is a bill before Congress that would add the estate, but that's not the law presently. So the award that was going to Mr. Finemore was reverted back to the VA, correct? Well, at this point, it's being held by the VA. The attorney's fees are being held. That's correct. I'm talking about the award that was made to him. He never did receive a check from the VA. No, Mrs. Finemore received that 80 percent. You're talking about Mr. Finemore. But Mr. Finemore did not, no, Your Honor. And he did not because he died. That's correct. And his death extinguished his claim. That's the question of law here. Correct? I mean, yes or no? I believe no, Your Honor. His death did not extinguish his claim? There is nothing in 5904 that discusses the extinguishment of the legal obligation created by that statutory contract. That statutory contract is based upon the obligation, once there was a determination of entitlement to service connection in 2007 by the board, for the VA to implement and assign a rating. That would have resulted, as a matter of law, in an award of past due benefits. It was unknown what that amount was, but it was known, and as a matter of law, there was an entitlement to… I'll be interested in hearing what your opponent has to say about that. My understanding is that if a veteran dies in this situation and the award has not been implemented, that that claim is extinguished. But either way, your argument is that because he did the work for Mr. Finemore, it reverts back to Mrs. Finemore. The work does, right? The derivative basis of the award for Mrs. Finemore goes to her, and therefore he's entitled to that fee. But he had to file a different application on behalf of Mrs. Finemore. Well, in fact, he did file that application. No one filed the application other than Mrs. Finemore. No, I know. He did file the application. But that, in my view, Your Honor… Does that start a new process? No, it only starts a process to determine whether or not there are eligible survivors to receive that award of past due benefits. Why isn't that a different claim? Because it is a claim that is predicated and only exists because of the claim that was pending and thus payable for attorney fees under 5904. So the regulation is pretty clear, I think, in my mind, that a fee arrangement needs to exist in order for the VA to pay out fees. Correct. They will not do that unless there's a fee agreement, and our court has upheld that interpretation. Your client did not sign a fee arrangement with Mrs. Finemore. No, no, and he has never asserted that he is entitled to any part of that 80% that was paid to Mrs. Finemore. As the dissent pointed out below, Mrs. Finemore becomes unjustly enriched by getting 20% that her husband had assigned away for the nearly 10 years' worth of work that Mr. Jackson did. Okay, let's hear from the VA. If I may, Ms. Avery-Bettelton, Mr. Carpenter, Ms. Thomas, if you could concentrate on the issues that are concerning us, it would be helpful. Certainly, Your Honor. And may it please the Court. Under Schneider, there was no award made to Mr. Finemore in this case. As was pointed out during the discussion with my friend, Schneider says that in order for an award to be made, there has to be an amount stated as the award for pursuing a claim for disability benefit. Can I ask, just because it's on my mind, you guys are going to keep the 20%? Yes, because under a long line of precedent, there is no right to benefits that exists after the death of an accrued benefits claimant. Just as there is no right that exists after the death of a veteran. The decision to hold on to the 20% and pay out to Mrs. Finemore before she died, the 80%, was with whose agreement? To withhold it? Yes. Had you not withholded it and just decided, you know, you're a stakeholder and essentially an interpleader action and you're just going to have done with it, give it to one side and let them fight about it, then at least they might have had an unjust enrichment claim, but you kept the 20%. And I don't remember, I think the papers actually say, but if you can remind me or just tell me, who agreed to that withholding with this surprising consequence? So, unfortunately, Your Honor, under precedence from this court, if the VA releases funds to a claimant and is later determined that the VA should have paid those funds to the lawyer, the VA is liable for the funds to the attorney and has to then itself attempt to recoup the funds that were incorrectly paid to the lawyer. But just as a factual matter here, did you make the decision unilaterally? Did Mr. Jackson sign off? Did Mrs. Finemore sign off? Who said what at the time? As a matter of practice, the VA withholds a portion of benefits when they are released to the claimant if there is a potential claim for direct payment of attorney's fees. And here, Mr. Jackson had already, in fact, long before Mrs. Finemore filed an application for accrued benefits, a few months after Mr. Finemore's death, Mr. Jackson filed a claim for attorney's fees. Did he ask for this withholding of the 20%? Or accede to it? Or was it just done with silence on his part? I imagine at the time he might have had mixed feelings about the possibilities. He did not explicitly ask for this, but Mr. Jackson is a frequent representative of veterans before the VA and presumably knew that it is the practice of the VA when there is a contested amount of benefits not to pay them until that dispute is resolved. I understood that withholding was by statute. The payment of the fees directly by the VA is by statute. I don't believe that the act of withholding as soon as there is a claim for attorney's fees is necessarily mandated by statute, but that is the way that the VA has implemented the statute to ensure that if it turns out that attorney's fees are payable, that it retains the funds. Well, whether it's necessary or not, I had thought that it was necessary, but in any event, it was retained for this purpose. But what is, should it appear that there are ambiguities here? What is the VA's position to the policy argument that on the position now taken, any attorney who is doing pro bono or contingent work for an elderly veteran will know that if the veteran dies, that won't be honored? We don't believe that that policy concern has much to support it. Well, it's certainly the situation here. Yes, Your Honor. And if that becomes or is binding precedent, that ends it, does it not? Actually, Your Honor, there was a change in the statutory law made in 2008 that wasn't applicable to this case but will be applicable in future cases that will make it easier for attorneys to avoid getting into this kind of situation. Well, if there's a change in law that would guarantee this payment, isn't it at least an apparent obligation of the agency to consider the policy underlying that change, especially if there's an ambiguity in the prior administration? Let me just explain the nature of the statutory change, Your Honor, because it doesn't guarantee payment. What it does is this was a change in the statutory law that's now codified at 38 U.S.C. Section 5121A. That's A without a parenthesis. That statute allows upon the death of a veteran who is pursuing a claim for benefits direct substitution of someone who would be eligible for accrued benefits into the proceeding that the veteran was pursuing so that the surviving spouse in this case, in effect, becomes the claimant pursuing the veteran's claim. The VA takes the position that in that instance that the continuing claim with the surviving spouse substituted for the veteran is all of a piece with the original claim for veteran's benefits with the result that so long as the surviving spouse has agreed in writing that when the surviving spouse receives benefits, the attorney's fee may be directly paid from those. So you still require a separate attorney fee arrangement in that situation? Yes, Your Honor. And the reason for that is that the VA believes, aside from the clear emphasis in Section 5904 upon the consent of the person to whom the benefits belong, the VA believes it's important for the claimant, the surviving spouse, to have the right to their choice of counsel in prosecuting the claim when they bring it. And if there were an encumbrance upon the potential benefits award, it would be more difficult for the surviving spouse to secure a counsel of their choice. Does the new statute or the VA's implementation of it condition the substitution on an agreement of the survivor to, to use a shorthand, honor the earlier attorney fee agreement? It does not, Your Honor. And because of that, it would be the prudent course for an attorney concerned about this sort of circumstance would be if entering into an agreement to represent a veteran who he feared was in poor health. Not that unusual. No, unfortunately not. To, at the same time, enter into a mutual, into agreement with both the veteran and his spouse, saying that he would represent the spouse if it became necessary, and that, in turn, he would be able to receive a portion of the, his fees from her benefits award. In this case, are we talking about two different claims? This is before the statute was amended, as you just... Yes, yes, Your Honor, we are. And that's been made clear in a long line of cases holding that the claims are separate because the, the accrued benefits entitlement arises under a separate statute from the veteran's entitlement, and it requires submission of a separate application for benefits. So they're separate claims. And the, the administration's not paying no attorney's fees on Mrs. Finemore's claim because there was no fee arrangement. And yet, it seems to me that the case for Mr. Finemore was completed. The only, the only thing left was perhaps even to mail a check. It, it seems to me that the VA indicated that, that the claim had been granted and that payment was being calculated. What, what, what else is there? What else is there to do? Even had he survived, I mean, and, and, and lived to see the check arrive, then Mr. Jackson would have been entitled to attorney's fees. As an initial matter, Your Honor, the, Mr. Jackson in his request for attorney's fees described his understanding of the situation as being that payment for Mr. Jackson, or Mr. Finemore was being calculated. But the fact of the matter was that the VA hadn't issued a decision, a formal decision, stating the amount, which means, which means that there had been no award, no formal decree. As a result, there, one of the most important elements of the adjudication process was still left to be completed. That is the issuance of a formal decision. Furthermore, even if the, even once that decision had been issued. That was a formality, right? I mean, the, the, the decision had been made that, that Mr. Finemore was entitled. He, he made his case, his service-connected case. So now he's entitled to those benefits. The, the determination had been made that his condition was service-connected. The determination had not been made that he was actually entitled to any past due benefit. I mean, for, before the rating decision is released, for all the VA or the claimant knows, the rating could be a zero, in which case. No, but that's not what happened here. Otherwise, Mrs. Finemore would not have been entitled to the accrual benefits, correct? That's right, Your Honor. So the distinction here, I think, is between the underlying facts existing, which ultimately led to the rating decision. So it's, we know now that Mr. Finemore's disability was such that he was entitled to a 60% in the 2016. Okay, so there were no more hearings, no more filings. There wasn't anything of that, of that sort after the decision had been made that he was entitled to the service-connected disability rating. Well, we don't actually. The case was closed at that point. Well, that never happened. So the case, the case wasn't closed. And as a matter of procedure, there often is a lot of additional litigation after a decision. But that didn't happen in this case. In this case, the only thing that happened after Mr. Jackson sent the letter is that he made an application on behalf of Mrs. Finemore in January. Well, actually, Your Honor, what happened was after Ms. Finemore's application was received, the VA recalculated and re-performed the rating analysis and then issued a formal decision. That was the piece missing from Mr. Finemore's claim. And that was the reason that no formal award was ever made to him. Now, neither was any cash payment made to him as required by Section 20.609. I just want to understand, this case on its facts does not present what might be a harder case, which is that an actual dollar amount and percentage of disability determination had been made, but no money had been paid out in that period. This involves death before even the 70% had been determined and the dollar amount determined, though not paid. Are those the facts? That's correct, Your Honor. It would be a harder case if the VA had issued a formal decision awarding a set amount of benefit prior to Mr. Finemore's death. Of course, even in that instance, we take the position that there would be no attorney fee payable because once Mr. Finemore died, the VA no longer possessed any benefits belonging to him. It is a well-established fact in this Court's precedent that when a veteran dies, his disability claim and his right to receive payment of disability benefits dies with him. That extends even so far as preventing his common law heirs or the personal representative of his estate from receiving any set amount. Let me make sure I understood your response to Judge Toronto's question. The way I understand it is that the rating decision had been made after Mr. Finemore died, but before the VA was notified of the death. That's correct, Your Honor. But the decision had never been issued, which is what makes the decision final under VA regulation. The only thing left in the case was to issue the decision and to cut a check. Assuming that no one wanted to, that Mr. Finemore didn't want to undertake additional litigation after receiving that decision, then yes, if he had survived, the only thing that would have happened remaining in his case is that the VA would have issued the rating decision, the benefits eventually would have been paid, and a portion of those benefits would have been paid to Mr. Jackson. Okay, so to be clear, what then was paid to the widow? 100% or 80%? 80% of the amount calculated pursuant to the ratings that were assigned to Mr. Finemore. They didn't, as in the cases we've seen in the past. They didn't pay the entire award to the widow, to the survivor. No, they did not, Your Honor, because Mr. Jackson had already indicated that he believed he was entitled to attorney's fees from that money, and so the VA withheld it pending resolution. Which takes us back to an earlier point. So the VA pockets the 20%. In this instance, because of the continuing litigation over attorney's fees, yes. If this litigation hadn't happened, then the VA would have released the full amount to Mr. Finemore. Why wouldn't you pay over those attorney's fees to the lawyer and create further incentive for our veterans to go out and get legal representation? Because the VA has to, under Section 5904, the policy encouraging representation is balanced against the fundamental principle that the money the VA is paying out here doesn't belong to the VA. It belongs to the person it was awarded to, who has the legal right to receive it. And the statute provides that the VA is only permitted to release that money to an attorney if the awardee has authorized that in writing. And Mrs. Finemore has never provided that authorization. And we probably don't want to encourage the VA to begin releasing money that doesn't belong to it, based upon its own feeling of what would be fair in the situation. Rather, we want the agency to rely upon the express written consent of the person who is entitled to the benefits under unambiguous statute. Yes, it sounds like whatever it is, no one can cope with it. It is a very complex issue. Are there any more questions for the government? Okay, thank you, Ms. Finemore. Thank you, Your Honor. Can you clarify the matter of whether Mr. Jackson either requested or in some way acceded to the VA's holding on to the 20% when it paid out the 80%? He certainly implicitly did. He did not explicitly do that. The government is correct. He did make a request that they withhold, but that was it. He didn't acquiesce in their – he didn't object to their withholding. But you said he also actually made a request that they do. Yes. It sounds like a perfectly reasonable bet. In his demand for fees, that would have been the consequence of that demand. Okay. However, I would like to clarify, I believe the government is incorrect that the statute does in fact mandate withholding. And therefore, what we have in this case is, I believe, a situation of the presumption of regularity that the VA would not have withheld, but for the fact that there was reason to believe that there was an obligation under 5904 to make that withholding. As the panel has suggested, the government clearly could have said what the position they're taking now, there's no reason for us to withhold, that money is reverted or paid entirely to the survivor. But that's not what they did. They withheld in this case. And do you agree that under the statutes, now that Mrs. Finemore herself has died, they cannot pay her estate that 20%? I do agree that that is the case, that this money will remain with the VA if this case is resolved unfavorably to Mr. Jackson. Now, in regards to the purported change in law relative to substitution, I have to disagree with the government's assessment that that somehow puts attorneys in a better position because of substitution. To the contrary, based upon the position just articulated by the government, such a policy would… Because they still need the agreement of the survivor. That's right, and it would encourage litigation with the survivors. Because let's take the fact set here. You've got nine plus years worth of investment, and then the veteran dies, and the widow says to that attorney, too bad, we're not interested. We want to have attorney A represent us, no longer have you represent us. That's only going to encourage litigation. That's not what Congress contemplated here. Congress contemplated… Shouldn't we respect that right, though, for the surviving spouse to be able to choose their own legal representation? If there is a legitimate accrued benefit issue, yes. But there was no, as I believe your questions have correctly pointed out, Judge Rayner, no legitimate accrued benefit issue. This was done in the record at page 46 through 51 is the January 31, 2008 rating decision. Was there anything left to do in Mr. Feimler's case? Absolutely nothing, your honor. Is it reasonable to suggest or assume that Mr. Feimler would have objected and created more litigation somehow? Frankly, as a result of the decision that I just referred to, there was nothing for him to object to. He could not have gotten a higher rating. He got the maximum benefits at the correct… He got what he was looking for. He got everything that he was looking for and had been looking for for nearly 12 years, and tragically never got to see himself. His widow did get the benefit of that and got the correct benefit, 80 percent, because there was a preexisting fee agreement that had assigned, while Mr. Feimler was alive, 20 percent of those past due benefits, and those past due benefits were realized. I think that really covers everything I had intended to say, unless there's further questions from the panel. No questions. Thank you, Mr. Carpenter, and thank you, Ms. Thomas. Case is taken into submission.